IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| TRISTA C. MULVANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:13cv677-MHT |
| | ) | (WO) |
| DENNIS MEEKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Pursuant to 42 U.S.C. §§ 1983 and 1985, plaintiff
Trista C. Mulvaney brought this case contending the
defendants violated her rights under the Fourteenth
Amendment by their deliberate indifference to her
serious medical needs while she was in custody in the
Covington County, Alabama Jail.[1]   There are two groups
of defendants: those involved primarily in providing
medical care at the jail (collectively, the "medical

---

    1. Mulvaney also cites the First, Fourth, Fifth,
and Ninth Amendments in her complaint, although it
appears that only the Fourteenth Amendment is relevant
to her claim, and she did not respond to the motion to
dismiss as to these claims.  The court will dismiss her
claims to the extent they are based on these other
amendments.

defendants"); and those associated with the overall supervision and custody of inmates in the Covington County Jail (collectively, the "Sheriff's Department defendants"): Sheriff Dennis Meeks, Jail Administrator Preston Hughes, and Corrections Officers Stacey Bedsole, Linda Benson,[2] Laura Hudson, and Linda Pouncey.[3] Subject-matter jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

The case is now before the court on the motion to dismiss filed by the Sheriff's Department defendants. The motion to dismiss will be granted in part and denied in part, for the reasons explained below.

_____

2. The complaint notes that Linda Benson carries the title of "Administrator Sgt. and Court Liaison Corrections Officer." Complaint (doc. no. 1) at 3. As she is referred to as a corrections officer in the remainder of the complaint, the court refers to her as such in this opinion, rather than as a supervisor.

3. The court previously dismissed plaintiff's claims against Covington County, its county commission, and certain individual commissioners. *See* Opinion and Judgment (doc. nos. 58 & 59).

## I. MOTION-TO-DISMISS STANDARD

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556).


## II. BACKGROUND

Mulvaney was arrested in August of 2011 and charged with possession of a controlled substance, unlawful possession of drug paraphernalia, driving under the influence of a controlled substance, and improper lane change. She was released on bond.

Early the following month, Mulvaney was in court to plead guilty to marijuana possession. A parole officer observed her slurring her speech and entering a men's bathroom and suspected that she was under the influence of an intoxicating substance in violation of the terms of her release on bond. A couple days later, a judge ordered her bond revoked and issued a warrant for her

**4**

arrest.   On September 13, 2011, Mulvaney was taken into custody on the bond-revocation warrant and incarcerated in the Covington County Jail.

Upon arrival at the jail, Mulvaney was placed in a cell with other inmates.  Within hours, she began "screaming, hallucinating, and acting in such a manner that other detainees asked that Correction Officers provide medical treatment" to her.  Complaint (doc. no. 1) at 6-7.  Her behavior was "erratic and strange," and included taking off all her clothes as well as urinating and defecating on herself and in various parts of her cell, but not the toilet.  *Id*. at 7. Other inmates observed her sitting naked on the sink in the cell, saw urine running out of her cell, and heard her screaming "throughout the day and night."   *Id*. From September 13 until September 18, she refused to eat or drink.

The jail nurses refused to see or treat Mulvaney during her incarceration.   Mulvaney contends that the

5

four correctional officers she named as defendants were aware of her concerning behavior and failure to eat, and did nothing to help her, with a couple minor exceptions. At some point during her incarceration, defendant correctional officer Bedsole expressed concern for Mulvaney's welfare by attempting to have her eat a candy bar and a drink, but Mulvaney was physically unable to eat any food. And, on September 18, as she continued to behave erratically, unnamed correctional officers ordered two inmates to wash Mulvaney, who at that time had dried urine and feces in her hair and all over her body. The inmates placed her back in bed after the shower.

At some point afterwards, Mulvaney fell from her bed to the floor and cut her eye. Correctional Officer Bedsole was observing Mulvaney on a monitor when this happened and saw the fall. At some point thereafter, Mulvaney was transported to a local hospital in a state of unconsciousness.

6

Her eye was sutured at that hospital, but her condition was so severe that she was transferred to another hospital for further treatment.  Testing there revealed that she was suffering from paracentral disc protrusions and a urinary-tract infection.  Doctors also determined that she had been experiencing a series of seizures.  She was admitted to the intensive-care unit and remained unconscious for approximately three days.

## III. DISCUSSION

The Sheriff's Department defendants move to dismiss on multiple grounds, including the statute of limitations, qualified immunity, lack of standing for equitable relief, and other grounds.  The court will address each argument in turn.

### A.  Statute of Limitations

The Sheriff's Department defendants argue that

Mulvaney's claims should be dismissed because she filed one day after the statute of limitations passed on her claims.  The medical defendants also moved to dismiss on this ground, and the court previously denied that motion, but with leave to re-raise the issue in an appropriate motion.  *See* Opinion and Order (doc. no. 62).  Rather than repeat the analysis here, the court will simply deny the Sheriff's Department defendants' argument for dismissal on statute-of-limitations grounds for the reasons set forth in the earlier opinion.  As with the medical defendants, the Sheriff's Department defendants may immediately re-raise the issue in an appropriate motion with evidentiary support.

## A. Eighth v. Fourteenth Amendment

The Sheriff's Department defendants argue that Mulvaney's claims should be dismissed because she improperly pleaded them under the Fourteenth Amendment

**8**

instead of the Eighth Amendment.   While constitutional claims of denial of medical care for pretrial detainees are brought under the Fourteenth Amendment's due process clause, those for convicted prisoners are brought under the Eighth Amendment's protection against cruel and unusual punishment.   *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). The Sheriff's Department defendants contend that, based on the complaint, Mulvaney was a convicted prisoner at the time of her incarceration.   Their argument is based on a misreading of the complaint, and accordingly dismissal on this basis will be denied.[4]

       The defendants argue that, based on the complaint,

_____

       4. The same standard applies to a claim for denial of medical care whether brought under the Eighth or the Fourteenth Amendment.   *See Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985) ("This court holds that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").   Thus, even if the complaint were improperly pleaded under the Eighth Amendment, the court would allow amendment.

Mulvaney was serving a sentence at the time of her incarceration, and accordingly she should have pleaded her case under the Eighth Amendment, rather than the Fourteenth Amendment, which applies only to pretrial detainees. The defendants' read of the complaint is understandable, as the complaint is confusingly drafted. However, their interpretation of the relevant allegations is incorrect. The complaint establishes that Mulvaney was a pretrial detainee during her incarceration, and, accordingly, that the Fourteenth Amendment governs her claim for denial of medical care.

The relevant facts in the complaint are the following. Mulvaney was arrested in August 2011 and charged with possession of a controlled substance, unlawful possession of drug paraphernalia, driving under the influence of a controlled substance, and improper lane change. In September 2011, she went to court to plead guilty to a different offense, marijuana possession. While in the courthouse for that plea, an

10

officer saw her acting erratically in the courthouse, which was a breach of the conditions of her release on bond.  Two days later, a State District Court judge issued an order revoking her bond.  After being informed that her bond was revoked, she was transported to the Covington County Jail.

The Sheriff's Department defendants seem to assume that Mulvaney pleaded guilty to possession of marijuana in the case stemming from the August arrest at the September court date, was put back on bond for some reason after her plea, and had her bond on the marijuana conviction revoked due to her behavior at the courthouse that day.  But that is a strained reading of the complaint.  Because she was not charged with marijuana possession in the August arrest, the reasonable inference is that the marijuana plea was taken in an entirely different case, and that her appearance in court that day was mentioned in the complaint only because it led to the revocation of her

bond in the case based on the August arrest, which in turn led to her incarceration.[5]

Thus, Mulvaney's case was brought properly under the Fourteenth Amendment, and the motion to dismiss on this ground will be denied.

### B. Qualified Immunity

#### 1. The Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "For a constitutional right to be clearly established, its

---

5. Indeed, review of Mulvaney's publicly available case records on Alacourt.com confirms this reading. *See State of Alabama v. Trista Mulvaney*, DC-2011-1660 (Covington County District Court); *State of Alabama v. Trista Carol Mulvaney* (DC-2011-1415) (Covington County District Court).

contours 'must be sufficiently clear that a reasonable official would understand'" that the conduct violates that right, thereby giving fair and clear warning to government officials who may engage in such behavior. *Hope v. Pelzer*, 536 U.S. 730, 753 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... ; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id*.

A defendant who invokes qualified immunity has the initial burden of showing that he or she "was acting within the scope of his or her discretionary authority when the challenged action occurred." *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1338 (11th Cir. 2020) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120

(11th Cir. 2013)).[6]  Once the defendants establish that they were acting within their discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To determine whether a plaintiff has met her burden, a court must both "decide whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right" and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (internal quotation marks and citation omitted).

It is undisputed that the actions of the Sheriff's Department defendants occurred in the exercise of their discretionary duties.  Thus, the court must analyze whether Mulvaney has met the burden of sufficiently

_____

6. "The term 'discretionary authority' 'include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'" *Patel*, 959 F.3d at 1338 (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

pleading against each defendant a constitutional violation that was clearly established at the time it occurred.

## 2. Constitutional Violation

Mulvaney contends that the Sheriff's Department defendants violated her constitutional rights under the Fourteenth Amendment by denying her necessary medical care while she was in the jail. To plead a Fourteenth Amendment claim for denial of medical care, a plaintiff "must sufficiently allege 'both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need.'" *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)).

A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In addition, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Id*. (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).

The Sheriff's Department defendants do not contest the seriousness of Mulvaney's medical need, and the court finds that the complaint plausibly pleads that her need was 'serious.' According to the complaint, Mulvaney was screaming and hallucinating, defecating and urinating on herself, and could not eat or drink for at least five days. She screamed throughout the day and night and sat naked in her cell. She had dried urine and feces in her hair, body, urinary tract, rectum, arms, and legs, and had to be cleaned by other inmates. Assuming the pleadings are true, as the court

must at a motion to dismiss, her medical needs were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243.   Mulvaney had a serious medical need.

Mulvaney's complaint must also plausibly plead that the defendants acted with deliberate indifference.   To satisfy this requirement, a plaintiff must plead facts showing a defendant's "(1) subjective knowledge of a risk of serious harm... [and] (2) disregard of that risk ... (3) by conduct that is more than mere negligence."[7]   *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).   Importantly, "imputed or collective knowledge cannot serve as the basis for a

---

7. While it makes no difference to the outcome here, the court notes that some panels of the Eleventh Circuit have described the third prong as "more than gross negligence," rather than "more than mere negligence." *See*, *e.g.*, *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010).   *But see Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016) (explaining that the "more than mere negligence" standard appears to be the correct one).

claim of deliberate indifference. Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (internal citations omitted).

As the analysis is distinct for the correctional officers and the supervisors, the court will analyze each in turn.

### a. The Correctional Officers

Mulvaney names four correctional officers in the complaint, defendants Bedsole, Benson, Hudson, and Pouncey. The motion to dismiss will be granted as to Benson, Hudson, and Pouncey, but not as to Bedsole.

The allegations of the complaint, as currently pleaded, are not sufficient to plead that defendants Benson, Pouncey, and Hudson were deliberately indifferent to a substantial risk of serious harm to Mulvaney. Although a close call, the allegations in

18

the complaint that these defendants "knew" and "were aware" of Mulvaney's condition and the substantial risk of serious harm she faced are unentitled to an assumption of truth because they are a conclusory tracking of one of the legal elements at issue, namely the subjective awareness subpart of the deliberate indifference prong. *See generally Iqbal*, 556 U.S. at 680-81 (finding that Iqbal's allegation that officials "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest,'" was a conclusory allegation of discriminatory intent). While there are other well-pleaded allegations in the complaint, they are insufficient to show that any of these defendants had the requisite knowledge of Mulvaney's condition for a finding of deliberate indifference. There is no allegation that these defendants were on duty during

the relevant period or that they were tasked with supervising Mulvaney or responding to her health needs.[8] There is no allegation that these individual defendants were in a position where they could see or hear Mulvaney's screaming, hallucinations, and other concerning behavior, or that they personally received a request for medical care for her or knew of such a request received by others. The complaint states that unnamed correctional officers had inmates clean Mulvaney because she was covered with feces; however, without any allegations suggesting that the defendant correctional officers were on duty when this happened, or otherwise knew of Mulvaney's condition, this allegation does not help. Thus, the claims against Benson, Pouncey, and Hudson will be dismissed. However, Mulvaney will be allowed to amend her

---

8. Indeed, as noted earlier, the complaint states that defendant Benson served as "Administrator Sgt. and Court Liaison Corrections Officer." Complaint (doc. no. 1) at 3. Her titles suggest she may not have been directly involved in overseeing inmates.

20

complaint to add more specificity to the allegations about these defendants.

As for correctional officer Bedsole, the allegations are sufficient. On a motion to dismiss, the court must "draw[] all reasonable inferences in the plaintiff's favor." *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). The complaint specifically states that Bedsole, out of concern for Mulvaney, attempted to have her eat a candy bar and a drink at some point, and that Mulvaney was physically unable to consume the food. It also states that Bedsole was observing Mulvaney on a television monitor and saw her fall off the bed. This, combined with the allegation that "Covington County Correction Officers" had observed Plaintiff Mulvaney's erratic and strange behavior on their Covington County Monitors," *Id*. at 10, is enough to support the reasonable inferences that Bedsole (1) monitored Mulvaney's behavior, (2) was aware of Mulvaney's bizarre behavior and refusal to

21

eat, and (2) due to the obviousness of Mulvaney's medical needs, drew the inference that Mulvaney had a serious medical need, but did nothing other than unsuccessfully attempting one time to try to get her to eat a candy bar and drink a soft drink. "[A]n official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997) (citations omitted), overruled in part on other grounds by *LeFrere v. Quezada*, 588 F.3d 1317 (11th Cir. 2009). The allegations are sufficient at the motion-to-dismiss stage to plausibly plead that Bedsole was deliberately indifferent.

Moreover, it was clearly established long before the events at issue in the case that doing almost nothing in the face of an inmate who is failing to eat or drink for days, hallucinating, screaming, urinating and defecating and covering herself with feces

constitutes deliberate indifference.  There are three

ways to show that a right is clearly established:

> "First, the plaintiff can point to a materially
> similar case decided at the time of the
> relevant conduct by the Supreme Court, the
> Eleventh Circuit, or the relevant state supreme
> court. ... The prior case law need not be
> directly on point, but existing precedent must
> have placed the statutory or constitutional
> question beyond debate. Second, the plaintiff
> can identify a broader, clearly established
> principle that should govern the novel facts of
> the situation. Third, the plaintiff can show
> that the conduct at issue so obviously violated
> the Constitution that prior case law is
> unnecessary."

*Patel*, 969 F.3d at 1186 (quoting *J. W. ex rel. Williams*

*v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259-60

(11th Cir. 2018) (internal quotation marks and

citations omitted)).

Broad, clearly established principles made clear

well before the events in this case that defendant

Bedsole's alleged actions here were unlawful.  "A core

principle of Eighth Amendment jurisprudence in the area

of medical care is that prison officials with knowledge

of the need for care may not, by failing to provide

care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999). Mulvaney's hallucinating, screaming, urinating and defecating on herself, and refusal to eat or drink for days on end were obviously serious medical needs, and any reasonable correctional officer would have known that the delay of at least five days in obtaining medical evaluation and treatment for her was unconstitutional.

The defendants argue that the complaint lacks allegations showing that any of officers were in a position to override the medical officials' policies and decisions. But the complaint does not allege that the officers deferred to the medical staff's judgment. The complaint does not say anything about any interaction between the officers and the medical staff, and the court, at this stage, must view the complaint

**24**

in the light most favorable to the plaintiff. Furthermore, within the four corners of the complaint, there is nothing to suggest that, had the officers done more, they *would* have been overriding medical officials' judgment. The complaint alleges that the medical providers refused to "see or treat" her, not that they examined her and determined that she was not in need of medical care. Complaint (doc. no. 1) at 8. Therefore, Mulvaney did not need to allege facts showing that the officers could have overridden the medical officials' judgment.

The court will therefore deny the motion to dismiss as to defendant Bedsole, but will grant it as to the other correctional officer defendants.


b. Claims Against Supervisors

With regard to the supervisory Sheriff's Department defendants, Sheriff Meeks and Jail Administrator Hughes, the complaint alleges a policy of underfunding

25

and delaying the provision of medical care in the jail. It also alleges that they failed to train and supervise their subordinates adequately, leading to Mulvaney's injuries. There are no allegations that Meeks or Hughes had any personal contact with Mulvaney.

"Supervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." *Harper*, 592 F.3d at 1236. A plaintiff may establish a causal connection in several ways, such as by showing "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation," and the supervisor's failure to do so. *Id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003), abrogated in part on other grounds by *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)). "Alternatively, the causal connection may be established when a supervisor's custom or policy ...

26

result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.*

The complaint's factual allegations are not sufficient to plead a plausible claim against the supervisory defendants. Other than alleging generally that Meeks and Hughes had responsibility for supervising the jail and that they were involved in retaining Southern Health Partners to provide medical services, the complaint contains very few factual allegations regarding these defendants. *See* Complaint (doc. no. 1) at 10 (supervisory defendants "could ... reasonably be aware" from common sense and prisoner complaints that cost cutting would result in constitutionally deficient medical care); *id.* at 13 (supervisory defendants "were aware of the consequences" of using Southern Health Partners).

Those factual allegations that Mulvaney does make against the supervisory defendants are insufficient to state a plausible claim of deliberate indifference. *Compare Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (complaint was insufficient to state a plausible claim against supervisory defendants) *with Harper*, 592 F.3d at 1236-37 (complaint that alleged specifics of similar incident that occurred one month earlier and involved the same supervisory jail personnel was sufficient). Therefore, Mulvaney's claims against the supervisory Sheriff's Department defendants, Meeks and Hughes, will be dismissed.

### C. Declaratory and Injunctive Relief

The Sheriff's Department defendants argue that Mulvaney's claim for declaratory relief should be dismissed because the complaint does not contain facts sufficient to support standing to obtain such relief. The court agrees.

28

In the complaint, Mulvaney requests, in addition to damages and costs, a declaration that the Sheriff's Department defendants violated her rights. She also requests that the court "instruct" the defendants to provide proper medical care and that the court establish a "panel of independent medical experts" to evaluate medical care and compliance. Complaint (doc. no. 1) at 15. The court views these latter requests as seeking injunctive relief. The standing requirements for both types of equitable relief are the same.

Relying upon *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the defendants argue that Mulvaney has not alleged facts to support standing to seek such relief. There is no indication in the complaint that Mulvaney was in the Covington County Jail at the time the complaint was filed and therefore would still be subject to the defendants' actions. Yet, in the complaint, she states that she will continue to suffer irreparable injury from defendants' conduct without

equitable relief.  However, she does not explain how or why.  This conclusory allegation is insufficient for *Lyons* standing.  *See id*. at 105 (requiring plaintiff to show a "real and immediate threat" that he would be both stopped for a future offense and subjected to a choke-hold in order to establish standing for an injunction against chokeholds).  Furthermore, the individual defendants have been sued only in their individual capacities, and "injunctive relief may only be recovered from public officials acting in their official capacities."  *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991).

Therefore, the motion to dismiss will be granted to the extent Mulvaney seeks equitable relief.


D.  Motion for More Definite Statement

The Sheriff's Department defendants move, in the alternative, for a more definite statement.  A court may grant such a motion if the complaint is "so vague

or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  The motion will be granted to the extent that, if Mulvaney decides to replead her claim against the three correctional officer defendants being dismissed, she shall provide additional detail as to the basis of their knowledge of her medical needs.

***

An appropriate judgment will be entered.

DONE, this the 13th day of January, 2021.

                              /s/ Myron H. Thompson
                        UNITED STATES DISTRICT JUDGE

31